**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

October 21, 2024

Kimberly A. Evans, Esquire
Lindsey K. Faccenda, Esquire
Irene R. Lax, Esquire
Robert Erikson, Esquire
Block & Leviton LLP
3801 Kennett Pike, Suite C-305
Wilmington, Delaware 19807

S. Michael Sirkin, Esquire
Benjamin M. Whitney, Esquire
Ross Aronstam & Moritz LLP
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801

RE:  *Berger v. Graf Acquisition, LLC, et al.*,
      C.A. No. 2023-0873-LWW

Dear Counsel:

I write regarding the plaintiff's motion to compel.[1]  The motion seeks additional document productions and an interrogatory response from former directors and officers of Graf Industrial Corp.—a special purpose acquisition company.  The motion is granted in part and denied in part, as outlined below.

## I.    RELEVANT BACKGROUND

This putative class action is brought by a former stockholder of Graf Industrial who asserts that the defendants impaired his redemption right in connection with a

---

[1] Pl.'s Mot. to Compel the Indiv. Defs. to Produce Docs. and Respond to Interrogs. (Dkt. 54) ("Mot.").

September 2020 de-SPAC merger.[2]  He invokes the entire fairness standard of review due to the lucrative founder shares awarded to the defendants, which allegedly created misaligned incentives.[3]  He asserts that the defendants sought to minimize redemptions in order to close a value-destructive transaction with Velodyne Lidar, Inc.  They did so through disclosures that allegedly left public stockholders' redemption decisions uninformed.[4]

The defendants have answered the plaintiff's complaint, and the case is in discovery.  Several motions to compel have been filed; all have been resolved, save one.[5]  At issue in the remaining motion are the plaintiff's first set of requests for production and first set of interrogatories, which were served on the individual defendants.[6]  Though some discovery has been provided, the parties are at an impasse on whether more is warranted.

---

[2] *See* Verified Am. Class Action Compl. (Dkt. 1) ("Compl.") ¶¶ 11, 131-45.

[3] *See In re MultiPlan Corp. S'holder Litig.*, 268 A.3d 784, 792 (Del. Ch. 2022) (outlining how founder shares without redemption and liquidation rights created "mismatched incentives" in the context of a value-destructive business combination relative to public stockholder who had liquidation and redemption rights).

[4] Compl. ¶ 9.

[5] *E.g.*, Dkts. 53, 55.

[6] Mot. Exs. 3-4.

## II.   ANALYSIS

Court of Chancery Rule 26(b) states that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[7]  "Although the scope of discovery is broad, it is not limitless."[8]  This court has the discretion to set limits on discovery and address the "annoyance, embarrassment, oppression or undue burden or expense" placed on a party.[9]

I first apply these concepts to the plaintiff's requests for document production. Although I conclude that the documents sought are relevant, the defendants may employ measures—including technology—to limit the cost and burden associated with reviewing them.  I next consider the plaintiff's interrogatory request and conclude that it is overly intrusive.

---

[7] Ct. Ch. R. 26(b)(1).

[8] *Brown v. Matterport*, 2023 WL 3830501, at *1 (Del. Ch. June 5, 2023).

[9] *Fitzgerald v. Cantor*, 1998 WL 780129, at *1 (Del. Ch. Oct. 23, 1998) (explaining that the scope of discovery "is within this Court's discretion"); *see also In re Tyson Foods Inc.*, 2007 WL 2685011, at *3 (Del. Ch. Sept. 11, 2007) ("[T]his Court may exercise its sound discretion in delineating the appropriate scope of discovery.").

### A.    Document Production

The plaintiff seeks documents from two periods: (1) June 16, 2018 through January 1, 2020 (the "Pre-2020 Documents"); and (2) January 1, 2020 through March 31, 2021 (the "2020-2021 Documents").[10]  I take them in reverse.

#### 1.    2020-2021 Documents

The defendants generally agree that the 2020-2021 Documents are relevant.[11] They insist that the plaintiff's proposed search criteria, which would require the review of 125,000 documents, is burdensome and disproportionate to the needs of this case.[12]  The search terms alone support their argument.  They include unlimited terms like "Dee" (80,053 hits with family), "Velodyne" (41,182 hits with family), and "grafcq.com" (77,573 hits with family).[13]  But the defendants' counterproposal went too far.  It eliminated terms relating to important issues such as Velodyne's

---

[10] Mot. ¶¶ 8, 11.

[11] *See* Indiv. Defs.' Opp'n to Pl.'s Mot. to Compel the Indiv. Defs.' to Produce Docs. and Respond to Interrogs. ¶¶ 3-5 (Dkt. 65) ("Opp'n"); *see also* Mot. Ex. 10 at 2.

[12] Opp'n ¶ 3.  The defendants also raise several merits-based damages arguments that have little bearing on my resolution of this motion.  *See Fox v. Paine*, 2010 WL 2163148, at *1 (Del. Ch. May 20, 2010) ("I must resolve the discovery dispute as a discovery dispute before parties can complete additional briefing and I can examine the claims and their merits.").

[13] Mot. Ex. 10.

products and Graf Industrial founder shares, and it applied extensive proximity limiters to other terms.[14]

Fortunately, the defendants also propose a reasonable means to address their burden concerns: a technology assisted review (TAR).[15] That is, the defendants are willing to review the universe of documents captured by the plaintiff's broad search terms so long as they can employ a TAR protocol. But the plaintiff rejected this offer and insists that the defendants conduct a manual review instead.[16]

TAR, or predictive coding, leverages machine learning techniques with the guidance of attorneys to facilitate the document review process.[17] The TAR system is trained with a representative seed set of documents selected and reviewed by attorneys for relevance.[18] The system ingests this initial set of documents and

---

[14] *See* Mot. Exs. 10-11.

[15] Mot. Ex. 12.

[16] Mot. ¶ 19 n.23.

[17] *See* Paul E. Burns & Mindy M. Morton, *Technology-Assisted Review: The Judicial Pioneers*, 15 Sedona Conf. J. 35, 36 (2014) (defining TAR as "a computerized system that harnesses human judgments . . . on a smaller set of [d]ocuments and then extrapolates those judgments to the remaining [d]ocument [c]ollection" and predictive coding as an industry-specific term for the TAR process); *see also* Thomson Reuters, *How to make the e-discovery process more efficient with predictive coding*, https://legal.thomsonreuters.com /en/insights/articles/how-predictive-coding-makes-e-discovery-more-efficient (last visited October 21, 2024); Wallis M. Hampton, *Predictive Coding: It's Here to Stay*, Skadden, Arps Discovery Bulletin, https://www.skadden.com/media/files/publications/2014/06/lit_ junejuly14_ediscoverybulletin.pdf (last visited October 21, 2024).

[18] *See Moore v. Publicis Groupe*, 287 F.R.D. 182, 185 (S.D.N.Y. 2012) (explaining the process of training TAR software systems).

undergoes iterative rounds of sampling and manual review, during which it learns and improves.[19] Human reviewers remain involved in quality control, including by reviewing and running keyword searches over documents coded by the program as non-responsive.[20]

TAR promotes efficiency in the discovery process in several meaningful ways.[21] First, with appropriate quality control and system training, TAR reduces the document set for human review and limits it to documents more likely to be responsive.[22] Second, TAR processes apply a more uniform relevance standard than

---

[19] *See id.*; Robert M. Abrahams & Scott S. Balber, *Technology-assisted review—Predictive coding*, 4 New York Practice, Commercial Litigation in New York State Courts § 30:40 (Robert L. Haig ed., 5th ed. 2024), Westlaw (database updated October 2024) (describing the iterative training process for TAR programs).

[20] *See Moore*, 287 F.R.D. at 184 (describing a quality control review of the TAR software); *see also Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 128-29 (S.D.N.Y. 2015) (same).

[21] *See Hyles v. New York City*, 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016) (opining that "TAR is the best and most efficient search tool").

[22] *See Chen-Oster v. Goldman, Sachs & Co.*, 2014 WL 716521, at *1 (S.D.N.Y. Feb. 18, 2014) ("This approach essentially elides the search process with the substantive determination of relevance, and it has the advantage of saving resources for the producing party, which need not conduct a further review for responsiveness."); *see also* The Sedona Conf., *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 166 (2018) ("Courts should encourage and promote the use of technology and processes to . . . ensure that the costs and burdens associated with the . . . production of responsive ESI is proportional to the needs of the case.").

manual document review using keyword searches.[23]  Third, and relatedly, a more manageable document set for manual review means lower costs for litigants.[24]

TAR can also yield superior results.  The plaintiff fears that TAR has "the potential [to] exclud[e] responsive documents from the review process."[25]  But this is a risk in any document review—including by human reviewers.  "[S]tatistics clearly show that computerized searches are at least as accurate, if not more so, than manual review."[26]

TAR provides a balanced solution to the conflict between a requesting party's desire for broad discovery and a producing party's incentives to limit burden and resource depletion.  Whether to employ it is a matter for the producing party to decide since it is "best situated to evaluate the procedures, methodologies, and

---

[23] *See Moore*, 287 F.R.D. at 190-91 (noting that keyword searches often operate like "the child's game of 'Go Fish'" and result in "large numbers of irrelevant documents"); *see also* Maura R. Grossman & Gordon V. Cormack, *Technology-Assisted Review in E-Discovery Can Be More Effective and More Efficient Than Exhaustive Manual Review,* 12 Rich J.L. Tech. 1 (2011) (discussing computer-assisted review as an available alternative to address inefficiencies in keywords searches).

[24] *See Moore*, 287 F.R.D. at 193 (observing that computer-assisted review may result in lower legal fees for both parties); The Sedona Conf., *Commentary on Proportionality in Electronic Discovery*, 18 Sedona Conf. J. 141, 173 (2017) (discussing "significant cost savings in furtherance of proportionality").

[25] Mot. ¶ 19 n.23.

[26] *Moore*, 287 F.R.D. at 190 (citing Herbert L. Roitblatt et al., *Document Categorization in Legal Electronic Discovery: Computer Classification vs. Manual Review*, 61 J. Am. Soc'y for Info. Sci. & Tech. 70, 79 (2010)).

technologies appropriate for producing [its] own electronically stored information."[27] It is not up to the requesting party to block TAR if the producing party prefers it. Nor is it necessarily a matter for the court to dictate.[28] "[W]here a producing party wants to utilize TAR for document review, courts will permit it."[29]

Thus, the defendants may use TAR to reduce their discovery burden, so long as they are transparent with the plaintiff about their computer-assisted review process.[30] Delaware counsel must remain closely involved in the review and

---

[27] *In re Mercedes-Benz Emissions Litig.*, 2020 WL 103975, at *1 (D.N.J. Jan. 9, 2020) (citing The Sedona Conf., *The Sedona Principles, Second Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production* (Sedona Conf. Working Gp. Series, Phx., Ariz.) June 2007, at 38 (available at https://thesedonaconference.org/publication/The_Sedona_Principles)).

[28] *See Dynamo Hldgs. v. Comm'r of Internal Revenue*, 143 T.C. 183, 188-89 (2014) ("[T]he Court is not normally in the business of dictating to parties the process that they should use when responding to discovery. If our focus were on paper discovery, we would not (for example) be dictating to a party the manner in which it should review documents for responsiveness or privilege, such as whether that review should be done by a paralegal, a junior attorney, or a senior attorney. Yet that is, in essence, what the parties are asking the Court to consider—whether document review should be done by humans or with the assistance of computers."); *cf. Hyles*, 2016 WL 4077116, at *4 (explaining that it is "not up to the Court, or the requesting party" to force the responding party to use TAR).

[29] The Sedona Conf., *supra* note 22, at 118 (recognizing that each party should be able to "fulfill[] . . . its obligations without direction from the court or opposing counsel . . . unless a specific deficiency is shown in a party's production"); *see also Rio Tinto*, 306 F.R.D. at 127-28 (collecting cases).

[30] *Moore*, 287 F.R.D. at 192 ("[S]uch transparency allows the opposing counsel (and the Court) to be more comfortable with computer-assisted review, reducing fears about the so-called 'black box' of the technology. This Court highly recommends that counsel in future cases be willing to at least discuss, if not agree to, such transparency in the computer-assisted review process.").

sampling process for the TAR review.  If the plaintiff believes that the defendants' response is deficient, it may seek relief from this court.

### 2. Pre-2020 Documents

As to the Pre-2020 Documents, relevance is in dispute.  The plaintiff requests documents predating the SPAC's initial public offering.  He asserts that these documents relate to potential conflicts of interest—specifically, the award of founder shares to the individual defendants.[31]  The defendants counter that the requests are designed to shore up a baseless theory and are disproportionate to the needs of the case.[32]

The plaintiff's requests are generally relevant under Rule 26.[33]  The financial incentives created by the founder shares could create a motive to withhold material information that would make public stockholders more likely to redeem.  The plaintiff's request, however, would have the defendants undertake extensive electronic discovery to address a narrow topic.  Limits must be applied to reduce the disproportionate burden posted by these requests.[34]

---

[31] *See* Mot. ¶ 26; Pl.'s Reply in Supp. of Mot. to Compel the Indiv. Defs.' to Produce Docs. and Respond to Interrogs. (Dkt. 66) ¶ 18.

[32] *See* Opp'n ¶¶ 28-31.

[33] Ch. Ct. R. 26(b)(1).

[34] *See Plaza Sec. Co. v. Office*, 1986 WL 14417, at *5 (Del. Ch. Dec. 15, 1986) (noting that "considerations of subject matter, time, and space are important to confine the scope

It would be vexatious to require the defendants to collect eighteen months of data from six document custodians so that a hit report can prove the obvious: the requests are overbroad.[35] A more proportionate approach can uncover the desired information. The individual defendants can provide documents sufficient to show their compensation arrangements for service as directors or officers of the SPAC and (if different) their receipt of founder shares. If there are any similarly discrete topics in the pre-2020 period still in dispute, the plaintiff should identify them and the parties can meet and confer on a similarly targeted production.

## B.     Written Discovery

The plaintiff's Interrogatory No. 17 asks that the individual defendants "[s]tate [their] net worth and [their] annual income in each of 2020 and 2021."[36] The defendants objected on relevance grounds.[37] The plaintiff asks that I compel responses.

---

of discovery to those matters that are truly relevant and to prevent discovery from evolving into a fishing expedition").

[35] *See Fortis Advisors v. Johnson & Johnson*, 2021 WL 4314115, at *3 (Del. Ch. Sept. 21, 2021) (observing that it is "no small task" to provide search term reports, which requires a party to "interview the potential custodian, identify the locations of documents, collect documents from all potential sources (often including cell phones), load the data into a review database, deduplicate it, and then run search terms"); *see also* Edward P. Welch et al., *Mergers & Acquisitions Deal Litigation* § 8.02[D] (2020) (describing the document collection process).

[36] Mot. Ex. 3.

[37] Mot. Ex. 6.

It is hard to say that this information is irrelevant under Delaware law. A director's economic circumstances may put in context the materiality of relevant financial interests.[38] If the value of founder shares were material to a director, for example, it may bear on her incentives in making disclosures that might affect public stockholders' redemption decisions.

At the same time, one's net worth and income are deeply personal. The plaintiff's unsupported and untested allegations are insufficient to require the provision of this sensitive information in narrative form. There are less intrusive ways to convey it.[39]

The parties are to meet and confer about a more measured way for the individual defendants to provide general information. Such means may include documents, deposition testimony, or written discovery aimed at the materiality of the founder shares in the context of the director's approximate financial

---

[38] *See, e.g.*, *Orman v. Cullman*, 794 A.2d 5, 30 (Del. Ch. 2002) (finding that there is "no bright-line dollar amount" for material benefit, and a reasonable inference of materiality can be based on context in which the benefit was received); *Kahn v. Portnoy*, 2008 WL 5197164, at *2 (Del. Ch. Dec. 11, 2008) (finding allegations of materiality sufficient based on dollar amount alone).

[39] *See* Ct. Ch. R. 26(c) (authorizing the court to protect against discovery causing "annoyance, embarrassment, oppression, or undue burden" where "good cause" exists); *see Sokol Hldgs. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *9 (Del. Ch. Aug. 5, 2009) ("[M]inor relevance does not justify invading the privacy of [a party].").

circumstances.[40]  The plaintiff's request for an order requiring the individual defendants to convey detailed financial information in an interrogatory response is denied.

## III.   CONCLUSION

The plaintiff's motion to compel is granted insofar as the 2020-2021 Documents may be reviewed using a TAR protocol and the Pre-2020 Documents sufficient to show the nature of the individual defendants' compensation must be produced.  It is denied as to Interrogatory No. 17, except that the parties must confer on a less intrusive way for general information to be provided.  The motion is otherwise denied.[41]  IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[40] *Cf. Seaford Funding v. M&M Assocs.*, 1996 WL 255886, at *2 (Del. Ch. Apr. 9, 1996) ("[T]ax returns are not discoverable when the information sought is readily available from other sources or if disclosure of some portion of the return would be sufficient." (citing *Cleveland v. Cleveland*, 1985 WL 21135, at *1 (Del. Ch. June 26, 1985))); *Walbert v. C.F. Schwartz Motor Co.*, 1987 WL 9609, at *2 (Del. Super. 1987) (noting, in the context of assessing the defendant's ability to pay damages, that "[r]equests aimed at ascertaining a defendant's net worth 'must be reasonable and should only disclose [the d]efendant's general financial condition with some detail when essential'").

[41] On October 18, the plaintiff wrote a letter raising additional issues concerning his motion. After reviewing this decision, the parties are to inform the court by joint letter of any remaining matters on which the parties are at an impasse after meeting and conferring.